# QUIST *v.* OSTROM.

PATENTS; INTERFERENCE; BURDEN OF PROOF; JOINT APPLICATION; REDUC-
TION TO PRACTICE; ABANDONED EXPERIMENT; PRIORITY OF INVENTION.

1. Where, in an interference between an applicant and a patentee, it ap-
   pears that the applicant's application was filed after the issuance of
   a patent to his rival, but that at the time of the issue there was a
   joint application of the applicant and another pending, which might
   have been put in interference with the patentee's application, the pat-
   entee is nevertheless entitled to the advantage, so far as the burden of
   proof is concerned, which a regularly issued patent gives in a contest
   with a rival claimant under an application thereafter filed.
2. Where one of the parties to an interference claimed to have made and
   successfully tested a device embodying the invention of the issue, an
   improvement in sewing machines, by attaching it to a sewing machine
   manufactured by his assignee, a sewing machine company, and operat-
   ing it, but it appears that the device was then removed from the ma-
   chine, which was afterwards sold to the trade, and put away in the
   drawer of a desk in a room to which the officers of the company alone
   had access, where it remained four years, during which time the old
   machines and improved ones were sold without such device being at-
   tached to them or used in any way, or any attempt being made to obtain
   a patent upon it, although it was a simple device easily attached to the
   machines then in use, and there were no difficulties in the way of its
   manufacture, it was *held* that the making and operating of the device
   must be regarded as an unsuccessful and abandoned experiment. Fol-
   lowing *Warner* v. *Smith,* 13 App. D. C. 111; *Guilbert* v. *Killinger,* 13
   App. D. C. 107; *Traver* v. *Brown,* 14 App. D. C. 34; *Howard* v. *Hey,*
   18 App. D. C. 142.
3. *Quære,*—whether, assuming that the invention in question was actually
   reduced to practice at the time of the alleged test and operation, it was
   not concealed from the public in such a manner as to subordinate the
   right of the inventor to the claims of a rival who entered the field
   and obtained a patent during the time of such concealment.

No. 231.   Patent Appeals.   Submitted November 12, 1903.   Decided Janu-
                            ary 5, 1904.

HEARING on an appeal from the decision of the Commissioner
of Patents in an interference case.                    *Affirmed.*

The facts are sufficiently stated in the opinion.

*Mr. Edwin H. Brown, Mr. Harold Binney, Mr. Charles S. Jones,* and *Mr. Charles E. Foster* for the appellant.

*Mr. Livingston Gifford* and *Mr. Odin B. Roberts* for the appellee.

Mr. Justice SHEPARD delivered the opinion of the Court:

This is an appeal from the decision of the Commissioner of Patents in an interference proceeding involving the following issue:

"1. In a buttonhole-sewing machine, work-moving mechanism, and needle-thread tension mechanism, combined with a tension-controller, means interposed between the tension-controller and the work-moving mechanism by which the tension-controller is actuated from said work-moving mechanism, and connections between said tension-controller and needle-thread tension mechanism, whereby the degree of tension given the needle-thread may be automatically varied by said controller during the sewing operation, and stitches of different character formed at the ends and sides of the buttonhole.

"2. In a buttonhole-sewing machine, a work-feed mechanism including a rotating feed-disk, and a needle-thread tension mechanism, combined with a tension-controller connected to and rotating with said rotating feed-disk, and connections between said tension-controller and the needle-thread tension mechanism, whereby by the rotation of said tension-controller in unison with said feed-disk the degree of tension given the needle thread may be automatically varied during the sewing operation."

Freeland W. Ostrom, the appellee, holds a patent for the invention issued November 29, 1898, upon an application filed December 17, 1897. Thorvald W. Quist, the appellant, filed his application on February 9, 1899. It appears that at the time of the grant of Ostrom's patent there was pending in the Patent Office a joint application by James T. Hogan and Quist

for a device to accomplish the same practical purpose and which by amendments, had they been suggested, might have been put in condition for a declaration of interference with Ostrom's application.    However that may be, as against this application of Quist claiming to be the sole inventor of the specific device of the issue, Ostrom is clearly entitled to the advantage, in respect of the burden of proof, which a regularly issued patent gives in a contest with a rival claimant under an application thereafter filed.    The reasons for this conclusion are satisfactorily stated in the Commissioner's decision, and there is no occasion for their restatement.*    To this burden imposed upon the appellant by

*That portion of the Commissioner's decision referred to in the opinion is as follows:

"Ostrom is a patentee, so that if Quist is to prevail in this proceeding, it is incumbent upon him to prove priority of invention beyond a reasonable doubt. *Sharer* v. *McHenry*, 19 App. D. C. 158.

"Quist contended before the lower tribunals that Ostrom's patent was irregularly issued, and, for this reason, that Ostrom should not derive the advantage ordinarily given to a patentee over an applicant with respect to the sufficiency of proof required from the applicant to overcome a patent.

"The irregularity alleged is that Quist and one Hogan had a joint application copending with the Ostrom application, between which applications an interference should have been declared.    In this event, Quist would have obtained knowledge of the pendency of the Ostrom case, and might then have filed an application and contested the interference with Ostrom as an applicant.

"The Ostrom application was filed December 17, 1897, the joint application of Quist and Hogan was filed March 10, 1898, and the Quist sole application February 9, 1899.    The Ostrom application matured into a patent November 29, 1898, so that the Ostrom application was copending with the joint application of Quist and Hogan from March 10, 1898, to November 29, 1898.    There was no basis in the Quist and Hogan application for the claims of the Ostrom patent, so that no interference could have been declared between the Ostrom application and the joint application of Quist and Hogan on these claims.    Quist and Hogan, however, had made broader claims, which Ostrom might have made, and Quist now contends that the office should have suggested the broad claims made by Quist and Hogan to Ostrom, and declared an interference on the broad subject-matter common to the two applications.

"In the first place, if the office had suggested Quist and Hogan's claims to Ostrom, there is no certainty that Ostrom would have made these claims. If he should not have made them, then Quist and Hogan would not have obtained knowledge of Ostrom's application.

"Prior to the decision of Commissioner Duell in *Hammond* v. *Hart*, 83 O. G. 743, C. D. 1898, 52, it was not the practice of the office to suggest claims to applicants for the purpose of creating interferences.

"This decision, which was rendered April 25, 1898, said:

" 'The decision in the *Upton Case* seems to have been in the main followed until the decision in the case of *Reed* v. *Landman*, C. D. 1891, 73, 55 O. G. 1275.    This case overruled *Ex parte Upton*, 27 O. G. 99, in its holding that when one claim included another there is an interference.    It prac-

the patent of the appellee is superadded the weight which this
court has always given to unanimity of decision in the Patent
Office.

tically revived and affirmed the decision in *Drawbaugh* v. *Blake*, 23 O. G.
1221. In one respect, however, it made an exception to the decision in the
earlier case in that it held that an interference should be declared be-
tween a generic or broad claim and a specific or narrow claim when both
claims are drawn on the same structure. The Commissioner said:

." 'Of course, generic and specific claims, based upon the same structure
of invention, conflict, because the invention is one and the same, whether
generically or specifically stated.' "

" 'The reason for the exception made by the Commissioner is not given.
On principle it does not seem to me to be well founded. Either claim would
sustain a separate patent. The existence of both patents does not extend
the monopoly of either claim. One patentee may reissue to make an inter-
ference with the patent of the other. Even if one has lost the right of re-
issue, there is but one monopoly running. It cannot run more than seven-
teen years. It may be terminated by the result of a suit in court. It is
not essential to the decision of this case to assert that this exception is
clearly erroneous, and the necessity for its application to any given case
hereafter can easily be avoided. Where two applications are concurrently
pending, having claims of different scope drawn on the same structure, I
see no good reason why the examiner should not give the applicant making
the specific or narrow claim an opportunity, by suggestion, if necessary, to
make the broader claim. If the suggestion is followed, then the parties
would be making a claim identical in tenor and scope, and an interference
will properly and naturally follow.

" 'In giving approval to such practice, I have considered the case of *Ex
parte Weeden*, C. D. 1892, 185, 60 O. G. 1191, and to this extent that case
may be considered as overruled.'

"This decision did not make it mandatory on examiners to suggest claims;
but merely stated that under certain conditions no good reason appeared for
not so doing. The only condition expressly referred to was where two ap-
plicants disclosed the same specific structure, and · one of the applicants
had a specific claim to the structure, and the other a generic claim thereto.
Under this condition, the Commissioner said:

" 'I see no good reason why the examiner should not give the applicant
making the specific or narrow claim an opportunity, by suggestion, if nec-
essary, to make the broader claim.'

"In the case at bar, however, the tension controller of the Quist and Ho-
gan application was specifically different from the tension controller of the
Ostrom application. The practice announced in *Hammond* v. *Hart*, there-
fore, would not have warranted the examiner in suggesting the Quist and
Hogan claims to Ostrom.

"Furthermore, even assuming that the examiner should have suggested
Quist's and Hogan's claims to Ostrom, his failure to do so would not, pre-
sumably, have worked an injury to Quist and Hogan, for if anyone was in-
jured by the examiner's alleged inadvertence, it was Ostrom. Then, again,
assuming that Quist and Hogan may have been injured by the alleged in-
advertence of the examiner, Quist and Hogan, as joint applicants, are a
different entity from Quist, and the latter, therefore, would have no ground
of complaint individually.

"It must be held that there was no irregularity or inadvertence in the
issue of the Ostrom patent, and the lower tribunals were right in giving
Ostrom the full status of a patentee."—REPORTER.

Those decisions elaborately review the important evidence bearing on the claims of the respective parties, and in our view of the case it is unimportant to add anything thereto.

It appears that Ostrom has exercised commendable diligence since June 4, 1897, when he constructed two machines embodying the invention, in filing his application and subsequent actual reduction to practice by complete tests.

Quist, on the other hand, conceived the invention in the early spring of 1894, and produced in evidence a device made about that time, which it is claimed was temporarily attached to a sewing-machine of the manufacture of his assignee, the National Machine Company, and successfully operated. The device was then removed from that machine, which was afterward sold to the trade, and put away in the drawer of a desk in a room to which alone the principal officers of the company had access.

In 1896, and 1897, the National company manufactured a new machine and put it upon the market, without attempting the incorporation or attachment of the Quist tension-controller. Neither this nor the first-mentioned machine was satisfactory to the manufacturers of garments on account of the defective "barring-stitches" across the ends of the buttonhole-slit.

In February, 1898, Hogan made a tension-controller differing in details of construction from that formerly made by Quist, and it was attached to machines and put upon the market by the National company. Under the case stated, the question for determination was this: Was it shown by Quist with the necessary certainty of proof that his invention had been successfully tested and reduced to practice as claimed?

We agree with the tribunals of the Patent Office that it was not.

It is evident that, since the introduction of the first buttonhole-stitching devices, the discovery of a means whereby, with one continuous movement, the defects in such stitching could be overcome, had been regarded as a matter of great importance by the trade, and that Quist and his company, as well as other inventors and the manufacturers, were fully alive to the commercial value of such an invention.

If, then, Quist really made this discovery and became fully convinced of its practical usefulness early in 1894, there is no conceivable reason why he or the National company should have deliberately concealed the invention from the public for four years or more.

The device was a simple one, easily attached to the machines then in use, and there were no difficulties in the way of its manufacture.    Yet during four years they sold the old machines, made and sold improved ones, without attaching or using this effective device, or attempting to obtain a patent upon it, and even invented, patented, and manufactured another.    Such conduct is irreconcilable with the idea that the experiment of 1894 had operated in such manner as to demonstrate its practical operativeness to the satisfaction of its inventor and owner.

Referring to the decision of the Commissioner for a review of the evidence upon which it was sought to overcome this presumption, it is sufficient here to say,—that, in our opinion, it lacks the requisite certainty and weight.

In the light of all the facts and surrounding circumstances, we can arrive at no other conclusion than that what was done in 1894 amounted to nothing more than an insufficient and unsatisfactory experiment, as has been frequently held in other cases where the conditions were somewhat the same.  *Warner* v. *Smith,* 13 App. D. C. 111, 116; *Guilbert* v. *Killinger,* 13 App. D. C. 107; *Traver* v. *Brown,* 14 App. D. C. 34, 41; *Howard* v. *Hey,* 18 App. D. C. 142.

This conclusion renders unnecessary the consideration of the second question that was also determined against the appellant, namely:   Assuming that the invention was actually reduced to practice early in 1894, was it not concealed from the public in such manner as to subordinate the right of the inventor to the claims of his rival who entered the field and obtained a patent during the time of such concealment?

The decision of the Commissioner of Patents must be *affirmed, and it is so ordered.*